**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MARC TARABOUR, PETER RIORDAN, MURRAY MANKOWITZ, MIKE DIMURO, KEN BOSLAND, JEFF BELLUARDO, TONY MONG, JEFF MIRABILE, JACK KRAMER, ROBIN DRYLIE, KAITLYN JACKSON, LEANN LUGASHI, STAN KLEIMAN, ROBERT LEWIS, ED MEYER, and THE ASSOCIATION OF CURRENT AND RETIRED LIVINGSTON AUXILIARY POLICE OFFICERS, INC.,

       Plaintiffs,

v.

TOWNSHIP OF LIVINGSTON, LIVINGSTON POLICE DEPARTMENT, and POLICE CHIEF CRAIG M. HANDSCHUCH,

       Defendants.

Civ. No. 10-3213 (DRD)

**O P I N I O N**

*Appearances by:*

BERMAN SAUTER RECORD & JARDIM PC
by: Thomas C. Jardim, Esq.
222 Ridgedale Avenue
Cedar Knolls, New Jersey 07927

 *Attorney for Plaintiffs*

GENOVA, BURNS & GIANTOMASI
by: Sandro Polledri, Esq.
   Erica K. Rustad, Esq.
494 Broad Street
Newark, New Jersey 07102

 *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

This case concerns an investigation into possible financial improprieties and fraudulent solicitation by members of Livingston Township Auxiliary Police Associations. Plaintiffs, each auxiliary police officers, have brought this action in an effort to halt inquiries by the Livingston Police Department into the conduct and records of their organizations. Having had limited success with an application for injunctive relief, Plaintiffs now seek over $51,000 in attorney's fees.

Plaintiffs have submitted this fee application pursuant to 42 U.S.C. § 1988(b). Plaintiffs argue that because they were successful in obtaining: (1) a preliminary injunction barring the implementation of a May 31, 2010 directive ordering Auxiliary Police Officers to disassociate from their organization; and (2) an order reinstating John Belluardo, Ken Bosland, Mike DiMuro, Robin Drylie, Tony Mong, Peter Riordan and Marc Tarabour, that they should be entitled to all legal fees incurred in connection with this litigation, including the costs of the currently pending appeal.

Having examined these arguments, Plaintiffs' motion is DENIED.

## I. BACKGROUND

The Township of Livingston Police Department employs about 75 full-time police officers. (Def. Pl. Br. 2) (Doc. No. 16). For many decades, the Township has also maintained a smaller group of auxiliary police officers to provide for additional personnel and resources in the case of public emergencies. Id. The officers in the Auxiliary Unit are volunteers who are trained to assist in functions such as traffic direction, crowd control, and patrol duty. Id. at 3. Auxiliary officers serve under the direction and supervision of the Chief of Police and are authorized to carry firearms. Id.

Throughout the years, auxiliary officers have formed organizations to pursue common interests and objectives. In May 1952, several officers formed a not-for-profit corporation called the Livingston Police Associates Club (the "Club"). Id. at 4. The Club was formed for the purpose of creating and maintaining a shooting range at which police officers, both regular duty and auxiliary, could practice their firearm skills. Id. In the early 1990s, another auxiliary organization, the Auxiliary Police Association (the "Association") was formed. Id. The Association was an unincorporated group operating pursuant to a Constitution and a series of Bylaws. Pursuant to this Constitution, the Association gave substantial control over its operations to the Chief of Police, including the right to "supervise", "exercise control", and "exercise veto powers" over the Association's activities. Id. at 5. The Association's principal activity was to raise money to pay for the uniforms and equipment of auxiliary police officers. Id.

On November 30, 2009, Defendant Handschuch sent a memorandum to all auxiliary police officers informing them that he intended to exercise more direct control over the Association. (Polledri Cert. Ex. 18). In particular, the memo stated that promotions within the auxiliary officer ranks would be made by the Chief of Police and not by the Association itself. Id. After receiving these instructions, on December 30, 2009, Association President Jeff Mirabile and two other auxiliary police officers formed a new not-for-profit corporation called the Livingston Auxiliary Police Association, Inc. (the "2009 Corporation"). Id. Ex. 9.

The 2009 Corporation was neither affiliated with, nor controlled by, the Livingston Police Department. Indeed, the name of the 2009 Corporation appears deliberately chosen so that it could easily masquerade as the original Association. In fact, it appears that neither Defendant Handschuch nor the Township realized that a new organization had been created for several months. While the 2009 Association was not recognized by the Township of Livingston, it

nevertheless used stationary and advertisements that featured an image of the Livingston Police Department badge. Id. Ex. 10. Moreover it solicited funds from Livingston business owners through fundraising letters that purported to be sent on behalf of the Livingston Auxiliary Police. Id.

In early 2010 Plaintiff Mirabile began to take further action to resist Defendant Handschuch's control. On February 22, 2010, Plaintiff Mirabile threw another auxiliary officer out of the Association and informed him that he was no longer welcome to use automobiles purchased through Association fundraising. Id. Ex. 20. That same day, Plaintiff Mirabile told Defendant Handschuch that the 2009 Association would not reimburse the Township for purchases of uniforms and patches for auxiliary officers as it had in the past. Id. Ex. 21.

Relations between Plaintiff Mirabile and Defendants continued to deteriorate. On or about March 9, 2010, the Police Department learned that Plaintiff Mirabile had allegedly threatened two Township employees. (Def. PI. Br. 10). This was not the first time that Plaintiff Mirabile had been involved in questionable behavior. In October of 2009, Plaintiff Mirabile had been involved in another incident with another off-duty auxiliary officer, Darin Dubrow. Id. at 8. On March 19, 2010, Defendant Handschuch suspended Plaintiff Mirabile pending an internal investigation into his conduct. (Polledri Cert. Ex. 24).

In the course of this investigation, Defendants learned about the newly formed 2009 Association and its fundraising efforts. On March 26, 2010, Defendant Handschuch directed Plaintiff Mirabile to provide records and bank information related to the 2009 Association to the Police Department. Id. Ex. 28. Through counsel, Plaintiff Mirabile refused. Id. Ex. 29. By subsequent letter of counsel, Plaintiff Mirabile confirmed that he had retained attorneys for the purpose of "investigat[ing] improper behavior by… the police department." Id. Ex. 30. On April

4

8, 2010 Defendants sent Plaintiff Mirabile a letter informing him that it was launching a second investigation into his behavior. Id. Ex. 32.

In May 31, 2010 Defendants issued a Memorandum directing all auxiliary police officers to either leave the 2009 Association or be removed from their positions. Id. Ex. 33. In early June, Defendants scheduled an interview of Plaintiff Mirabile in which he would be questioned about facts that had been uncovered in the internal investigation. (Def. Pl. Br. 14).

On June 14, 2010, Plaintiff Mirabile filed a complaint against the Township of Livingston, the Livingston Police Department, and Craig Handschuch, the Livingston Police Chief in New Jersey Superior Court. (Doc. No. 1). The complaint asserted claims for: arbitrary, capricious and bad faith actions by defendants; violations of Mirabile's constitutional rights for freedom of speech and for freedom of associations; violation of N.J.S.A.40A:14-147; violation of fundamental fairness and procedural due process; violation of N.J.S.A. 40A:14-191, *et seq.*, (the New Jersey Attorney General Guidelines of Internal Affairs); and violation of the Local Government Ethics Law, N.J.S.A. 40A:9-22.1, *et seq*. Plaintiff Mirabile sought, among other things, to enjoin the scheduled interview and bar any other investigation into his conduct. On June 23, 2010, the complaint was removed to this Court. Id.

On July 8, 2010, Defendants sent a letter to the 2009 Corporation demanding that it cease and desist from using the name and badge of the Livingston Police Department in its fundraising materials. (Polledri Cert. Ex. 12). The letter informed the 2009 Corporation that it could be in violation of the New Jersey Charitable Registration and Investigation Act. N.J.S.A. 45:17A-18 *et. seq*. Two days later on July 10, 2010 Plaintiffs created a new organization, called the "Association of Current and Retired Livingston Auxiliary Police Officers, Inc. (the "2010 Corporation"). (Def. Pl. Br. 7).

On July 23rd, 2010, an amended complaint was filed naming as plaintiffs not only Mirabile, but also additional Livingston auxiliary police officers, and the 2010 Corporation. (Doc. No. 10). Plaintiffs then sought emergency injunctive relief by order to show cause, asking this Court to: (1) enjoin the investigations into Plaintiff Mirabile and the various auxiliary organizations, (2) reinstate all officers removed for failure to comply with the May 31, 2010 memorandum, and (3) enjoin Defendants from interfering with auxiliary officer membership in the 2010 Corporation. (Doc. No. 11).

On November 29, 2010, this Court issued an Order denying, in large part, Plaintiffs' requests for injunctive relief. (Doc. No. 37). In a ruling dictated from the bench, this Court held that the Livingston Police Department and Police Chief had the authority to investigate Plaintiffs and the activities of their organizations. (Doc. No. 32). However, this Court did enjoin Defendants from implementing the May 31, 2010 memorandum, as it constituted a constitutionally impermissible restriction of auxiliary police officers' right to association. This Court also ordered that Defendants reinstate any auxiliary officers removed due to non-compliance with that directive. Id.

Based on the November 29, 2010 order, Plaintiffs now move the Court for attorney's fees pursuant to 42 U.S.C. § 1988(b).

## II.  DISCUSSION

In a suit brought under 42 U.S.C. § 1983, a court "in its discretion, may allow the prevailing party… a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). In enacting the statute, Congress viewed § 1988 fees as "an integral part of the remedies necessary to obtain" effective compliance with § 1983. Maine v. Thiboutot, 448 U.S. 1, 11 (1980) (quoting S. Rep. No. 94-1011 at 5 (1976)).

Plaintiffs contend that this fee award is "mandatory" (Pl. Reply 4) and that this Court, having issued a preliminary injunction, has no choice but to award Plaintiffs' counsel their full fees. This is incorrect. While "a prevailing plaintiff should ordinarily recover an attorney's fee" after success on a § 1983 action, a court may not grant fees if "circumstances would render such an award unjust" Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). Indeed, "[t]here is no doubt that the award of counsel fees is a matter of the court's discretion rather than an absolute right. Isaacs v. Temple University, 467 F. Supp. 67, 69 (E.D. Pa. 1979). Courts have repeatedly refused to award fees altogether where the record demonstrates inequitable conduct by the prevailing party or an unreasonable inflation of the bill by counsel.[1]

Moreover, interim awards of attorney's fees are inappropriate where the only relief obtained is a preliminary injunction which may be subsequently overturned on the merits. See People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 234 (3d Cir. 2008) (noting that a "fee award [would be] premature [where] further proceedings on the merits of the injunction were clearly contemplated."); see also Dupuy v. Samuels, 423 F.3d 714, 722 -723 (7th Cir. 2005) (finding that "the district court's award of attorneys' fees, even on an interim basis, was premature" where "[a]lthough the district court expressed the expectation that the remaining proceedings would not be lengthy, it also made it clear that there was still work to be done.").

---

[1] See, e.g., Lewis v. Kendrick, 944 F.2d 949, 956 (1st Cir. 1991) ("To turn a single wrongful arrest into a half year's work, and seek payment therefor, with costs, amounting to 140 times the worth of the injury, is, to use a benign word, inexcusable. We should not tolerate, even by a partial award, such an imposition by counsel on the defendants, and on the court. In the exercise of the statutory discretion, we reverse the award of fees altogether."); Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980) ("Where, as here, the claim is obviously inflated to an intolerable degree, the remedy is plain, and the District Court properly pursued it. If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful, and the District Court responded appropriately in the case at bar.").

Indeed, the Supreme Court has held that the award of a preliminary injunction does not make a plaintiff a "prevailing party" for the purposes of § 1988 if the plaintiff ultimately loses on the merits. Sole v. Wyner, 551 U.S. 72 (2007).[2] Before attorney's fees may issue, "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598, 603-604 (2001).

Here there has been no final judgment on the merits and the overwhelming majority of Plaintiffs' claims have not yet been adjudicated. In addition, there are serious allegations that Plaintiffs have behaved in an unabashedly criminal fashion, obtaining donations through fraud, misappropriating money intended for charitable use, and conducting acts of armed harassment against Township employees. It would be inappropriate to award interim attorney's fees before the Court has the facts at its disposal to determine whether "special circumstances" exist which would preclude a fee award altogether. Truesdell v. Philadelphia Housing Authority, 290 F.3d 159, 163 (3d Cir. 2002).

Even if an interim award were appropriate, the amounts requested by Plaintiffs' counsel are clearly improper. While § 1988(b) permits attorneys who have "obtained excellent results," to "recover a fully compensatory fee" for "all hours reasonably expended on the litigation," that is not the case here. Hensley, 461 U.S. at 435. Indeed, where the prevailing party "has achieved only partial or limited success," it is appropriate for the court to reduce the fee award

---

[2] See also Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002) ("We recognize that there will be occasions when the plaintiff scores an early victory by securing a preliminary injunction, then loses on the merits as the case plays out and judgment is entered against him-a case of winning a battle but losing the war. The plaintiff would not be a prevailing party in that circumstance."). Note that the instant case is not like Watson or People Against Violence, where a plaintiff was held entitled to attorney's fees after winning a preliminary injunction because the application for permanent relief was subsequently mooted. Here no claims have been mooted and no final disposition on the merits has been made.

8

accordingly.[3] Id. at 435-36. A downward reduction is warranted "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 318 (3d Cir. 2006). A court may not, however, "decrease a fee award based on factors not raised at all by the adverse party." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).

In their complaint Plaintiffs assert multiple claims in seven counts. In its brief, Defendants break the counts down into thirteen different legal claims and argue that Plaintiffs have won, at best, 15% of them.[4] But no matter which accounting is adopted, Plaintiffs have not prevailed on the overwhelming majority of their claims and cannot be awarded fees for time spent pursuing claims upon which they have not yet prevailed. Rode, 892 F.2d at 1183 (3d Cir. 1990) (a fee award should be reduced by the number of hours "spent litigating claims on which the party did not succeed").

Moreover, the billing records provided by Plaintiffs clearly indicate that they seek fees for legal work that is entirely unrelated to the injunction that was issued, including (1) work related to the formation and merger of the various not-for profit corporations created by Plaintiffs; (2) work pertaining to the appeal of the denial of injunctive relief; and (3) work related

---

[3] Plaintiffs' Counsel claimed at oral argument that "his understanding of the caselaw" required that he be paid fees for "the whole ball of wax." This position is entirely unsupported in Plaintiffs' papers and by the relevant law.

[4] Defendants' list includes: (1) freedom of association under the U.S. Constitution (2) freedom of association under the N.J. Constitution; (3) freedom of speech under the U.S. Constitution; (4) freedom of speech under the N.J. Constitution; (5) liberty and reputational interests under the due process clause of the U.S. Constitution (6) liberty and reputational interest under the due process clause of the N.J. Constitution; (7) procedural due process under the U.S. Constitution; (8) procedural due process under the N.J. Constitution; (9) New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. (10) arbitrary, capricious and "bad faith" conduct; (11) N.J.S.A. 40A:14-147, which establishes the limitations period and procedures for the discipline of sworn police officers; (12) N.J.S.A. 40A:14-181 et seq., which pertains to internal affairs guidelines; and (13) the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 et seq. (Def. Br. 11-12).

to the internal affairs investigation. While Defendants have summarized the entries in Plaintiffs' billing logs that are most obviously inappropriate, this Court could not make any award of fees before receiving a sworn certification from Plaintiffs' counsel that none of the work for which fees are sought was related to the internal affairs investigation, the creation of new associations for the purpose of soliciting donations, the appeal of this Court's order, or any number of other inappropriate activities. It is not the proper role of the Court to guess at the relevance of vague billing entries.

Since the Court has ample basis to deny the fee award as premature, it will not address whether this case is also, as Defendants contend, over-staffed and top-heavy for a dispute of its complexity. However the parties would do well to note that complexity that is added through the introduction of large numbers of frivolous and unsupportable claims will not ultimately justify a larger fee award.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Fees is DENIED.

          s/ Dickinson R. Debevoise
          DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: March 9th, 2011